IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Alfred Redwine, | ) Civil Action No.:2:14-cv-4558-TLW-MGB |
| Petitioner, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| Warden Leroy Cartledge, | ) |
| Respondent. | ) |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 28; see also Dkt. No. 27.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on November 26, 2014. (See Dkt. No. 1 at 17 of 17; see also Dkt. No. 1-4 at 2 of 2.) At the same time he filed his § 2254 petition, Petitioner filed a Motion to Expand the Record. (Dkt. No. 2). On December 9, 2014, Petitioner filed a Motion for Issuance of Subpoena. (Dkt. No. 4.) On or about January 7, 2015, Petitioner filed a second Motion to Expand the Record. (Dkt. No. 21.) Around that same time, Petitioner filed a Motion to Stay (Dkt. No. 23).

On February 20, 2015, Respondent filed a Motion for Summary Judgment. (Dkt. No. 28; see also Dkt. No. 27.) By order filed February 23, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 31.)

On or about February 26, 2015, Petitioner filed another Motion for Issuance of Subpoena (Dkt. No. 33) as well as a Motion for Order to Show Cause (Dkt. No. 34.) On or about April 20, 2015, Petitioner filed a Motion "to Show Cause and Motion to Stay." (Dkt. No. 48.)

On June 1, 2015, the undersigned issued an Order denying the following motions: Petitioner's Motions to Expand the Record (Dkt. No. 2; Dkt. No. 21); Petitioner's Motions for Issuance of Subpoena (Dkt. No. 4; Dkt. No. 33); Petitioner's Motion to Stay (Dkt. No. 23); Petitioner's Motion for Order to Show Cause (Dkt. No. 34); and Petitioner's Motion to Show Cause and Motion to Stay (Dkt. No. 48). (See Dkt. No. 54.) Thereafter, on or about June 23, 2015, Petitioner filed a Response in Opposition to the Motion for Summary Judgment. (Dkt. No. 58.)

## **PROCEDURAL HISTORY**

The Petitioner is currently confined at McCormick Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In December of 2007, the Jasper County Grand Jury grand jury indicted Petitioner for murder and kidnapping. (See Dkt. No. 27-2.) Petitioner was represented by Dudley Ruffalo, Esquire. (See R. at 1.) On November 13, 2008, Petitioner pled guilty before the Honorable G. Thomas Cooper, Jr. (See R. at 1-16; see also Dkt. No. 27-10.) That same day, Judge Cooper sentenced Petitioner–pursuant to a negotiated sentence–to thirty years, concurrent, on each charge. (See R. at 15, 2-3.)

Petitioner did not file a direct appeal. However, on August 31, 2009, he filed an application for post-conviction relief ("PCR"). (R. at 17-24.) Petitioner asserted therein that he was being held in custody unlawfully due to an involuntary guilty plea and ineffective assistance of counsel. (R. at 17-19.)

On April 20, 2011, an evidentiary hearing was held before Judge D. Craig Brown. (R. at 32-75.) Petitioner was present and represented by Diane Piazza DeWitt, Esquire. (See R. at 32-33.) In a written order dated May 9, 2011, Judge Brown denied the application for post-conviction relief and dismissed the petition. (R. at 76-82.)

Petitioner, through his attorney Lanelle Cantey Durant of the South Carolina Commission on Indigent Defense, filed a Johnson Petition for Writ of Certiorari on March 27, 2013. (See Dkt. No. 27-4.)[1] Through counsel, Petitioner raised the following issue:

---

[1] See Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

> Did the PCR court err in failing to find plea counsel ineffective for not obtaining the transcript from the *Schmerber* hearing which made petitioner's guilty plea unknowingly and involuntarily entered because the transcript offered disputing evidence of petitioner's guilt?

(Dkt. No. 27-4 at 3 of 10.) Ms. Durant also filed a petition to be relieved as counsel. (Dkt. No. 27-4 at 9 of 10.) Petitioner filed a *pro se* response to the Johnson petition wherein he raised the following issue:

> Did the PCR court err in failing to grant a motion to continue for obtaining the transcript from Schmerber hearing, which offered disputing evidence that prompted petitioner's guilty plea unknowingly and involuntarily.

(Dkt. No. 27-6 at 3 of 9.)

In an order filed November 18, 2014, the South Carolina Court of Appeals denied the petition for a writ of certiorari and granted counsel's request to withdraw. (Dkt. No. 27-8.) The matter was remitted to the lower court on December 4, 2014. (Dkt. No. 27-9.)

Petitioner then filed the instant habeas petition, wherein he raised the following grounds for review (verbatim):

> **Ground One**: Ineffective assistance of counsel/involuntary guilty plea
>
> **Supporting Facts**: The PCR court erred in failing to find plea counsel ineffective for not obtaining the transcript from the *Schmerber* hearing which made petitioner's guilty plea unknowingly and involuntarily entered because the transcript offered disputing evidence of petitioner's guilt. . . .
>
> **Ground Two**: The PCR court erred in failing to grant a motion to continuance for obtaining the transcript from Schmerber hearing which offered disputing evidence that prompted petitioner's guilty plea.

(Dkt. No. 1; Dkt. No. 1-1.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when

they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

**DISCUSSION**

As noted above, Respondent seeks summary judgment in the instant case. (Dkt. No. 28; see also Dkt. No. 27.) For the reasons set forth herein, the undersigned recommends granting Respondent's motion.

**A.     Ground One**

In Ground One, Petitioner asserts his plea counsel was ineffective, and his guilty plea was therefore involuntary, because counsel failed to obtain the transcript "from the *Schmerber* hearing" because "the transcript offered disputing evidence of petitioner's guilt." (Dkt. No. 1.) The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id. While Strickland itself is a deferential standard, when both § 2254(d) and Strickland apply, "review is doubly" deferential. Harrington v. Richter, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

The two-part test enunciated in Strickland applies to challenges to guilty pleas based on ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). "[I]n order to satisfy

the 'prejudice' requirement [set forth in Strickland], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Before addressing the merits of Ground One, a review of some background information is warranted. At his PCR hearing, Petitioner–through his counsel–sought a continuance; although Petitioner had received a copy of his *Schmerber* hearing, PCR counsel had not seen it. (R. at 36.) Petitioner's counsel stated that she had spoken to the court reporter for the *Schmerber* hearing the day prior to the PCR hearing, and that the court reporter told her there were some corrections to the transcript but that the court reporter was in trial and unable to make those corrections. (R. at 36.) PCR counsel further stated,

> Uh–Mr. Redwine wants me to review that request–uh, corrected transcript, um, and then if necessary compare it to the Court Reporter's tape, which is–which she will allow me to do. Uh–(after pause) of course–and I–without reviewing it, I can't, uh, tell you, but my client was physically present at that hearing and believes that it's very relevant and important to his P-C-R application.
>   In addition, uh, although I met with Mr. Redwine for a substantial period of time, uh, when I met with him, all I had at that time was the transcript and some other documents, uh, from his Court file. Uh–due to miscommunications between me and Mr. Ruffalo as trial counsel, I thought Mr. Ruffalo had sent my client a copy of all the police reports and the, uh, State's file against him. Uh–Mr. Ruffalo did not do that; my client does want to review that information with me prior to proceeding with the P-C-R hearing. Your Honor.
>   And–and–since he only gets one bite at the apple, I would ask Your Honor that you grant the continuance.

(R. at 36-37.) The State opposed the motion, and the trial court denied Petitioner's request to continue the case. (R. at 37-38.) Accordingly, the transcript of the Schmerber hearing does not appear in the record before the PCR court.[2]

In addressing the Petitioner's claims of ineffective assistance of counsel and involuntary guilty plea, the PCR court first summarized the testimony at the PCR hearing as follows:

---

[2]Petitioner did attach a copy of the transcript to his petition. (Dkt. No. 1-2.) He also filed a Motion to Expand the Record, asserting that the transcript of the Schmerber hearing supports his claim of ineffective assistance of counsel. (See Dkt. No. 2.) That motion was denied on June 1, 2015. (See Dkt. No. 54.)

6

> Applicant testified that Cory Fleming, Esquire, represented him at the Schmerber hearing. He testified that he first met with plea counsel Dudley Ruffalo in February or March 2008. He asserted that counsel did not go over the DNA reports with him. Applicant testified that his brother has the same name as him, and his brother was the main suspect. He testified that several members of his family were charged with accessory after the fact and part of his negotiated plea agreement was that the charges against his family members would be dropped. He asserted that counsel told him that he should be thinking about his family and not about himself.
>
> Plea counsel testified that he met with Applicant 7-10 times prior to the plea hearing. He testified that he was [not] appointed until after the Schmerber hearing, but he spoke with the attorney who represented Applicant at that hearing. He testified that Applicant's blood sample from SCDC matched the DNA sample. He asserted that DNA was clearly not the deciding factor in this case. Counsel testified that the State's evidence included testimony from witnesses who watched Applicant grab the victim off the street in broad daylight. He asserted that he explained to Applicant the evidence against him, and he advised Applicant that there were so many little things to connect him to the crime. Counsel testified that he hired an private investigator and a DNA expert. He testified that he went to the various incident scenes, spoke with witnesses and law enforcement, met with his investigator, and reviewed the discovery with Applicant. Counsel testified that he and his investigator looked into the other Alfred Redwine and obtained a copy of his picture, but he was never a suspect. He asserted that Applicant was always the prime suspect.
>
> Counsel testified that there was not much wiggle room in his negotiations with the solicitor. He asserted that the solicitor offered thirty (30) years, and they did not discuss the charges against Applicant's family members being dismissed. He testified that he may have told Applicant that it was unlikely that anyone would convict his mother for protecting her son. Counsel asserted that Applicant told him he would plead guilty if he received a good deal. Counsel testified that he discussed the pros and cons of pleading guilty with Applicant. He testified that they also discussed the process of going to trial and making pre-trial motions. Counsel testified that it was Applicant's decision to plead guilty.

(R. at 77-78.) The PCR court further stated,

> This Court finds that counsel's testimony was credible. This Court finds that counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel conferred with the Applicant on numerous occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, Applicant's constitutional rights, Applicant's version of the facts, and possible defenses or lack thereof.
>
> The record reflects that Applicant understood the nature of the charges and the possible punishments. At the plea hearing, he indicated that he was satisfied with counsel and was pleading guilty of his own free will and accord. He told the court that he understood the terms of the negotiated sentence. He also admitted guilt at the plea hearing. This Court finds that Applicant's plea was entered voluntarily and

7

intelligently with a full understanding of the consequences. This Court finds that Applicant understood the terms of the negotiated sentence and that it was Applicant's decision to plead guilty. This Court also finds that Applicant filled out a document captioned "Defendant's Statement in Support of Guilty Plea," in which he indicated that he understood the consequences of the plea.

Regarding Applicant's claims of ineffective assistance of counsel, this Court finds Applicant has failed to meet his burden of proof. This Court finds that Applicant's attorney demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Strickland, 466 U.S. at 668; Butler, 286 S.C. 441, 334 S.E.2d 813. This Court further finds counsel adequately conferred with Applicant, reviewed the discovery with him, conducted a proper investigation, and was thoroughly competent in his representation. This Court finds that counsel obtained a favorable negotiated sentence for Applicant considering that Applicant was facing exposure of confinement for life for murder plus thirty (30) years for kidnapping. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

This Court finds that properly advised Applicant of the pros and cons of pleading guilty and going to trial. This Court finds that counsel's testimony regarding the plea negotiations was credible. Counsel testified that the charges against Applicant's family members were not part of the negotiated plea agreement.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions in his representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. This Court also finds the Applicant has failed to prove the second prong of Strickland, specifically that he was prejudiced by plea counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002).

(R. at 80-81.)

The undersigned recommends granting summary judgment to Respondent as to Ground One. At the PCR hearing, plea counsel testified that he spoke to Mr. Fleming about the Schmerber hearing, discussing "what happened," and plea counsel obtained a copy of the original motion. (R. at 49.) Plea counsel testified that the motion "states that they had, uh, taken Alfred's . . . D-N-A from his . . . previous incarceration profile" and "[c]ame up with kind of an ad hoc match to what was found at some of the crime scenes." (R. at 49.) Plea counsel testified he did not know of any problems with

the Schmerber hearing. (R. at 50.) Plea counsel also testified that Petitioner did not ask him to get a transcript of the Schmerber hearing, and that they did "not really" discuss the Schmerber hearing, though plea counsel testified that he "explained to [Petitioner] what a Schmerber hearing was and how you basically always lose them." (R. at 56.) The following exchange also occurred during plea counsel's testimony:

> Q. Okay. You were aware that an officer–or, actually two, testified at that hearing?
>
> A. Yes; Hipp and–Bysholds (phonetic/sic)?
>
> Q. And, uh, also the initial SLED D-N-A report that was used at the Schmerber hearing, uh, on that report there was no indication whatsoever of a match to Mr. Red–Redwine, was there?
>
> A. Well, on the Motion to get the Schmerber hearing–I looked it over, and item fourteen of the Solicitor's Motion says that Alfred Redwine's S-C-D-C blood sample is an apparent match to the D-N-A profile on the shirt recovered from the crime scene, which later turned out on the report to be true when they did like a–what we call a full-scale D-N-A.
>
> Q. But that's not what the report attached to the Motion said, is it?
>
> A. (After pause) I don't know. All I have is that.
>
> Q. Are you aware that the, uh, initial analysis confirmed the victim's blood was someone named Perry?
>
> A. Antwan Perry.
>
> Q. And then, uni–unidentified?
>
> A. Right, there was a bunch of stuff there. I mean . . . .
>
> (WHEREUPON, PROCEEDINGS WERE INTERRUPTED FOR A CONFERENCE, OFF THE RECORD.)
>
> (WHEREUPON, PROCEEDINGS CONTINUED.)
>
> A. D-N-A was clearly not the deciding factor here, I believe.
>
> Q. Okay. And in fact, uh, what evidence was there against Mr. Redwine?

>A. You know, there were a bunch of witnesses on the street that day when Alfred snatched this lady in sort of a semi-violent manner. She was struggling with him. Um–she had just been on videotape at a, uh, convenience store just a few moments beforehand with some a–acquaintances.
>
>She walked out on the street, Alfred apparently stopped his car, um, yelled at her, dragged her into his car, disappeared. The next time anybody saw her, she was in the woods with a hole in her head.
>
>. . .
>
>Q. Now, you're aware that even in the initial D-N-A analysis that was presented at that Schmerber hearing, uh, the D-N-A–D-N-A of Antwan Perry was found at the crime scene and the victim's?
>
>A. Also.
>
>Q. Only initially; is that correct?
>
>A. No; from the Motion of the Assistant Solicitor, she swears that, um, his–his blood was an apparent match on the shirt that was found at the crime scene. And, uh, that later turned out to also be true when you got the kind-a main, big D-N-A test.

(R. at 56-58, 65.) When asked whether Petitioner was the "initial suspect" in this case, counsel stated, "He [(Petitioner)] was always the suspect; he really was. I mean, everybody kind-a knew it was Alfred on the street that day during the taking of her." (R. at 67.) In addition, the following exchange occurred during plea counsel's testimony at the PCR hearing:

>Q. What about this Antwan Perry whose D-N-A was all over the vehicle?
>
>A. Right.
>
>Q. He was a suspect, wasn't he?
>
>A. Oh; sure. In a–an accessory way, my understanding of everything. If you'll read everything, it–they were always looking at Alfred.

(R. at 67-68.) Plea counsel's testimony continued as follows:

>Q. –if–if I could just hand–
>
>A. Sure.
>
>Q. –hand you this document? Uh–can–can you identify that document and SLED–

10

A. I've seen it.

Q. –D-N-A analysis?

A. –you know, I've seen it.

. . .

Q. –in your representation of Mr. Redwine, did you receive a copy of that initial D-N-A report?

A. I sent him everything I had which would have certainly included that. I mean, I made a–I make a real point of making sure that they get everything. . . .

Q. And was that report dated July?

A. This one is, uh, July 2nd 2007. The other SLED report is June 24th, 2008. Uh, where they definitely develop him as the D-N-A on the shirt that was left–

Q. Um–

A. –by the body of the victim.

Q. –Mr. Ruffalo, are you aware that the initial report you have in front of you, dated July 2007, is the one that was used at the Schmerber hearing?

A. It could be, yeah.

Q. Okay. And, uh, that report indicates D-N-A of the victim and of an Antwan Perry–

A. right.

Q. –were found at the scene, correct?

A. Sure.

Q. And an unidentified, uh, other person; correct?

A. Uh-huh.

    COURT REPORTER: Is that a yes or a no please?

A. Oh, I'm so sorry; yes, ma'am. Forgive me.

> Q. So Mr. Alfred Redwine's, uh, D-N-A was not found on–listed in the first SLED D-N-A analysis; was it?
>
> A. Apparently not; but, certainly in the final one it was. And like I said, you always lose those Schmerber hearings. They were gonna get his blood one way or the other.

(R. at 70-72.) Counsel also testified that he hired a DNA expert, Dr. Ostrowsky, to "go[] over the D-N-A profiles and protocols." (R. at 53.) Counsel stated, "I was hoping that the D-N-A expert would turn out that maybe there was some problem with the D-N-A analysis at SLED, which there wasn't." (R. at 68.)

The state court's rejection of Petitioner's claim of ineffective assistance of counsel and involuntary guilty plea is not contrary to, or an unreasonable application of, clearly established federal law, nor did the state court's adjudication result in a decision that was based on an unreasonable determination of the facts. The PCR court specifically found counsel's testimony to be credible. (See R. at 80-81.) Such a factual finding on credibility is "presumed to be correct"; Petitioner has the "burden of rebutting the presumption . . . by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003). He has not done so. While plea counsel did not obtain a transcript of the Schmerber hearing, plea counsel testified that he did speak to the attorney who represented Petitioner at the Schmerber hearing and that plea counsel was unaware of any problems with the Schmerber hearing. (R. at 48-50.) Furthermore, as noted above, counsel testified that "D-N-A was clearly not the deciding factor here." (R. at 57.) Counsel stated, "[T]here were just so many little things that would-a got" Petitioner at trial. (R. at 64.) The State's evidence included a witness "who knew Alfred" and "was the one who called . . . Alfred's girlfriend and said, you know, this just happened." (R. at 59.) Counsel stated that "there were a bunch of witnesses on the street that day when Alfred snatched this lady in a sort of a semi-violent manner." (R. at 58.) And regardless of what the DNA report at the Schmerber hearing stated,[3] counsel testified

---

[3]Of course, unidentified DNA does not necessarily exonerate the Petitioner. See Brown v. Sec'y, Fla., DOC, 580 Fed. App'x 721, 727-28 (11th Cir. 2014) (newly discovered evidence, that petitioner's DNA was not on mask worn by burglar, and that petitioner could not be excluded from DNA found on bandana left at crime scene, did not establish

that Petitioner's DNA matched the DNA found on a shirt where the victim's body was located. (R. at 71.) Counsel hired a DNA expert, but the DNA expert found no problems with SLED's DNA analysis. (R. at 68.) On this record, the undersigned concludes that Petitioner is not entitled to federal habeas relief. See Wilson, 352 F.3d at 860 ("These facts do not compel the credibility determination reached by the state court, but they certainly provide sufficient basis, for purposes of section 2254(d)(2), to support such a determination."); see also Harrington v. Richter, 562 U.S. 86, 101 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004))); Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear.").

Furthermore, the state court's rejection of Petitioner's claim of an involuntary guilty plea was not contrary to, or an unreasonable application of, clearly established federal law, nor did the adjudication result in a decision that was based on an unreasonable determination of the facts. "A guilty plea . . . is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). As the Supreme Court stated in Hill v. Lockhart, "[t]he longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). "In evaluating the constitutional validity of a guilty plea, 'courts

---

that petitioner was actually innocent of armed burglary, aggravated battery, and aggravated assault); Chitwood v. Gipson, Civ. A. No. 1:13-cv-00502 AWI MJS (HC), 2014 WL 7409085, at *32 (E.D. Cal. Dec. 30, 2014) adopted (E.D. Cal. Mar. 30, 2015) (rejecting claim that counsel was ineffective "for failing to test third party DNA evidence to show that Petitioner was innocent of the crime" and stating, "Petitioner presents no arguments that would refute or otherwise undermine the Prosecution's forensic evidence that placed the victim's blood on Petitioner's clothing. Regardless of whether the third party DNA was tested, the other DNA evidence created a strong inference that Petitioner was in contact with the victim near the time of her death.").

look to the totality of the circumstances surrounding [it], granting the defendant's solemn declaration of guilt a presumption of truthfulness.'" Unites States v. Moussaoui, 591 F.3d 263, 278 (4th Cir. 2010) (quoting Walton v. Angelone, 321 F.3d 442, 462 (4th Cir. 2003)).

During Petitioner's plea hearing, the judge went over the rights that Petitioner would be giving up by pleading guilty. (R. at 5-7.) Petitioner indicated that he understood those rights. (R. at 5-7.) The plea judge asked Petitioner, "Understanding those rights, do you still want to plead guilty or do you want me to set your case for trial?" (R. at 7.) Petitioner responded that he wanted to plead guilty. (R. at 7.) Petitioner stated he understood that he was pleading guilty with a negotiated sentence, meaning that if the judge accepted his plea, Petitioner would be sentenced to no more than thirty years on both charges. (R. at 5.) Petitioner stated that he was satisfied with his attorney, and that his attorney had done everything Petitioner asked in preparation for the plea. (R. at 7.) Petitioner indicated that he was pleading guilty of his own free will and accord. (R. at 8.) Petitioner agreed to the facts as stated by the solicitor and acknowledged he was "guilty of that." (R. at 8-10.) The state court found that Petitioner's "plea was entered voluntarily and intelligently with a full understanding of the consequences" and noted that Petitioner "admitted guilt at the plea hearing." (R. at 80.) On this record, the Petitioner is not entitled to federal habeas relief on his claim of an involuntary guilty plea. See 28 U.S.C. § 2254(d); see also Doe v. Woodford, 508 F.3d 563, 572 (9th Cir. 2007) (rejecting involuntary plea argument where the petitioner "participated in a thorough plea colloquy, in which he answered in the affirmative that his plea was voluntary under the circumstances and, specifically answered in the affirmative when asked if he had had enough time to discuss the plea with his attorneys"); United States v. Solomon, 106 Fed. App'x 170, 171 (4th Cir. 2004); United States v. Robinson, 82 Fed. App'x 322, 323 (4th Cir. 2003) ("Robinson's plea colloquy reveals that his plea was knowingly and voluntarily entered into."); United States v. DeFusco, 949 F.2d 114, 119-20 (4th Cir. 1991). The undersigned therefore recommends granting Respondent's Motion for Summary Judgment as to Ground One.

**B.     Ground Two**

In Ground Two, Petitioner contends the PCR court "erred in failing to grant a motion to continuance for obtaining the transcript from Schmerber hearing which offered disputing evidence that prompted petitioner's guilty plea." (Dkt. No. 1.) Petitioner is not entitled to habeas relief on Ground Two, as alleged infirmities in the state PCR proceedings do not present a cognizable ground for relief in federal habeas corpus. See Bryant v. Maryland, 848 F.2d 492, 494 (4th Cir. 1988) (claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas relief); Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998) (alleged defects in state post-conviction procedures are not cognizable in a federal habeas corpus action). Respondent is entitled to summary judgment on Ground Two.

## CONCLUSION

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 28) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[4]

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 8, 2015
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[4]    Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).